UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERMAN MONROE POLK,<br><br>Plaintiff,<br><br>v.<br><br>M. CREAMER-TODD,<br><br>Defendant. | Case No.  14-cv-04375-YGR (PR)<br><br>**ORDER DISMISSING AS MOOT PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO REMAINING CLAIM FOR MONETARY DAMAGES; AND ADDRESSING ALL OTHER PENDING MOTIONS** |

## I.    INTRODUCTION

Plaintiff Sherman Monroe Polk, a former state prisoner[1] who was previously incarcerated at the Correctional Training Facility ("CTF"), brings the instant *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, initially alleging the violation of his constitutional rights by Stockton Parole Supervisor Diane Gary, Stockton Parole Agent Roy Lacy, CTF Correctional Counselor M. Creamer-Todd, and the Department of Corrections and Rehabilitation ("CDCR"). Dkt. 1.  The Court has since dismissed all claims against the CDCR for failure to include any allegations that implicated the CDCR, and against Defendants Gray and Lacy for improper venue. Dkt. 7 at 5; Dkt. 11 at 2-3.  The operative complaint is the amended complaint (Dkt. 10), and the only remaining claim is a due process claim for misclassification against Defendant Creamer-Todd ("Defendant") for failing to correct an error that caused Plaintiff to lose his minor visitation rights. Plaintiff seeks injunctive relief and monetary damages.  Dkt. 10 at 12.

The parties are presently before the Court on Defendant's Motion for Summary Judgment.

---

[1] On January 15, 2016, mail sent to the Plaintiff at the prison was returned as undeliverable with a notation that Plaintiff has been "paroled."  Dkt. 100.  Clerk's Office staff has confirmed that Plaintiff was paroled on November 9, 2015.

Dkt. 73.  The central argument of Defendant's motion is that Plaintiff's amended complaint is barred based on his failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).  Also before the Court are Defendant's Motion to Stay Discovery Pending Ruling on Dispositive Motion (Dkt. 80) as well as Plaintiff's numerous motions, including in part his motions to: appoint counsel (Dkt. 19); amend his complaint (Dkts. 20, 21, 87); "stop retaliation" (Dkt. 47); compel discovery (Dkts. 37, 61, 63, 96[2]); and request a continuance to oppose summary judgment, which will be construed as Federal Rule of Civil Procedure 56(d) motion (Dkt. 84 at 28-30[3]).

Having read and considered the papers submitted in connection with this matter, the Court hereby DISMISSES as moot Plaintiff's claims for injunctive relief, GRANTS Defendant's motion for summary judgment as to the remaining claim for monetary damages, and addresses all other pending motions below.

## II.    CLAIMS FOR INJUNCTIVE RELIEF

As a preliminary matter, the Court notes that Plaintiff is no longer in custody because he has been paroled.  *See* Dkt. 100.  Prior to being paroled, Plaintiff had informed the Court that as of October 5, 2015, he was reclassified and given back his minor visitation rights.  Dkt. 95 at 1, 5.  As such, Plaintiff's claims for injunctive relief, which includes his request to be reclassified at CTF in order to be given his minor visitation rights, are DISMISSED as moot because the Court has confirmed that he was recently released on parole.  When an inmate is released from prison or transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, as is the case here, his claim for injunctive relief should be dismissed as moot.  *See Dilley v. Gunn*, 64

---

[2] Plaintiff's motion entitled, "Motion for Rebuttal," mentions discovery issues relating to his desire to identify certain Doe Defendants.  Dkt. 96 at 1-3.  Therefore, the Court construes it as a motion to compel discovery.

[3] Plaintiff's Rule 56(d) motion was attached to a document he filed on September 4, 2015, entitled "Attachment 13."  Dkt. 84 at 28-30.  The 31-page document was filed in the Court's electronic case management filing system under the heading "ATTACHMENTS/EXHIBITS" to Plaintiff's opposition.  *Id.* at 1-31.  The Court will consider the Rule 56(d) motion attached to this document as a separate filing, and will resolve it in this Order.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   F.3d 1365, 1368-69 (9th Cir. 1995); *Darring v. Kincheloe*, 783 F.2d 874, 876-77 (9th Cir. 1986).

2   A claim that the inmate might be sent back to the prison where the injury occurred is too

3   speculative to overcome mootness.  *See Dilley*, 64 F.3d at 1369.

4          Accordingly, Plaintiff's claims for injunctive relief are DISMISSED as moot.  He may

5   proceed with his claim for monetary damages, and the Court will now resolve the pending motion

6   for summary judgment relating to Plaintiff's failure to exhaust his administrative remedies as to

7   the remaining claim for such damages, as discussed below.

8   **III.    BACKGROUND**

9          The central issue presented in Defendant's summary judgment motion is whether Plaintiff

10  properly exhausted his administrative remedies.  Before turning to the facts of this case, the Court

11  briefly reviews the requirements of the PLRA and administrative review process applicable to

12  California prisoners.

13         **A.    Administrative Framework**

14          The PLRA requires a prisoner to exhaust "available administrative remedies" before

15  bringing an action with respect to prison conditions. 42 U.S.C. § 1997e(a).  "[T]he PLRA's

16  exhaustion requirement applies to all inmate suits about prison life, whether they involve general

17  circumstances or particular episodes, and whether they allege excessive force or some other

18  wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

19         Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal

20  standards, nor must they be "plain, speedy, and effective." *Booth v. Churner*, 532 U.S. 731, 739-

21  40 (2001).  The PLRA requires *proper* exhaustion of administrative remedies.  *Woodford v. Ngo*,

22  548 U.S. 81, 83 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and

23  other critical procedural rules because no adjudicative system can function effectively without

24  imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.  Thus,

25  compliance with prison grievance procedures is required by the PLRA to exhaust properly.  *Id.*

26  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise

27  procedurally defective administrative grievance or appeal." *Id.* at 84.

28          The CDCR provides its inmates and parolees the right to appeal administratively "any

3

United States District Court
Northern District of California

policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).[4]

To initiate an appeal, the inmate or parolee must submit a CDCR Form 602 ("appeal" or "grievance") describing the issue to be appealed to the Appeals Coordinator's office at the institution or parole region for receipt and processing. *Id.* § 3084.2(a)-(c). The level of detail in an administrative grievance necessary to exhaust a claim properly is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The level of specificity required in the appeal is described in the California Code of Regulations as follows:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.

Cal. Code Regs. tit. 15, § 3084.2(a)(3) (emphasis added). Inmates have "30 calendar days" to submit a grievance (using the prescribed CDCR Form 602) from the "occurrence of the event or the decision being appealed." *Id.* § 3084.8(b)(1).

The CDCR's appeal process consists of three formal levels of appeals: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee. *Id.* § 3084.7.[5] A prisoner exhausts the appeal process when he completes the third level of review. *Id.* § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." Cal. Code Regs. tit. 15, § 3084.1(b).

---

[4] The regulations pertaining to the inmate appeal process were amended effective January 28, 2011. As explained below, Plaintiff's relevant grievance was submitted *after* January 28, 2011; therefore, the amended regulations were in effect and govern his grievance.

[5] Under the amended regulations, the informal grievance level has been omitted and there are now only three levels: first level appeal, second level appeal, and third level appeal. *See* Cal. Code Regs. tit. 15, § 3084.7.

**B.     Factual Summary**

**1.   Plaintiff's Version**

The following factual background is taken from the Court's initial order dismissing the original complaint with leave to amend:

> The following is a summary of the allegations in Plaintiff's complaint. In 1985, the Fresno Superior Court and the CDCR erred by indicating that Plaintiff's criminal conviction involved copulation with a minor when the victim was an adult. The investigation and police reports indicated the correct age of the victim. In 2005, Plaintiff was released from prison and paroled to Stockton. Because of the error regarding the victim's age, a great deal of media attention focused on Plaintiff when he was released. For nine months, the Stockton Parole Department placed around-the-clock supervision on Plaintiff. Parole Supervisor Gary and Parole Agent Lacy said that the supervision was necessary based on threats made against Plaintiff's life because the public thought the victim of Plaintiff's crime was a minor. Supervisor Gary told the media that the victim was not a minor and that Plaintiff had no past history of crimes against children. She also told Agent Lacy to have the error corrected at the Department of Justice and to have the information deleted from the internet.
>
> Plaintiff was released from parole, but is now at CTF on a new charge. Plaintiff's counselor, [Defendant,] told him that because the victim of his 1985 crime was a minor, he cannot have visitation privileges with his children, have contact with any children or go to places where children congregate. Plaintiff told [Defendant] about the error that had been made in his case and that, if she looked at the police reports in his old central prison file, she would see the victim was an adult. [Defendant] refused to do this or to help Plaintiff in any way. Plaintiff is in jeopardy from inmates at CTF because he has falsely been labeled a child molester.
>
> Plaintiff seeks damages and injunctive relief including reclassification, restoration of visitation privileges, a flat screen television, typewriter, personal clothing and shoes, and elimination of the requirement to register with the police department.
>
> Although Plaintiff fails to indicate what constitutional right [Defendant] violated, he appears to be asserting a due process violation for misclassification.

Dkt. 7 at 2-3.

**2.   Defendant's Version**

In 2013, before Plaintiff arrived at CTF, he was housed in the Deuel Vocational Institution ("DVI"), where he was restricted from visiting with minors based on a June 13, 2013[6] general

---

[6] Defendant refers to a June 13, *2014* general chrono that indicates Plaintiff's sex crime

5

chrono or CDCR-128-B that indicated that he had prior criminal conviction under "PC 288A C

ORAL COP," which refers to California Penal Code § 288a(c) for Oral Copulation.  Dkt. 77,

Creamer-Todd Decl. ¶ 2, Dkt. 77-1 at 2, 4.

California Penal Code § 288a is entitled, "Oral copulation; punishment," and under

subsection (c), it states as follows:

> (1) Any person who participates in an act of oral copulation with another person who is under 14 years of age and more than 10 years younger than he or she shall be punished by imprisonment in the state prison for three, six, or eight years.

> (2)(A) Any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years.

> (B) Any person who commits an act of oral copulation upon a person who is under 14 years of age, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, shall be punished by imprisonment in the state prison for 8, 10, or 12 years.

> (C) Any person who commits an act of oral copulation upon a minor who is 14 years of age or older, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, shall be punished by imprisonment in the state prison for 6, 8, or 10 years.

> (D) This paragraph does not preclude prosecution under Section 269, Section 288.7, or any other provision of law.

> (3) Any person who commits an act of oral copulation where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat, shall be punished by imprisonment in the state prison for three, six, or eight years.

Cal. Penal Code § 288a(c).  The Court notes that the June 13, 2013 chrono did not specify which

particular subsection Plaintiff was convicted of under California Penal Code § 288a(c).

After a brief stay in DVI, Plaintiff moved to the California Correctional Institution, where

---

conviction.  Creamer-Todd Decl. ¶¶ 2, 5-6.  However, the record shows that the general chrono was dated June 13, *2013*.  Dkt. 77-1 at 4.  Therefore, it seems that Defendant made a typographical error, and thus the correct date is June 13, 2013.

he continued to be restricted to non-contact visits with minors.  *Id.* at 7.

Plaintiff was then transferred to California Substance Abuse Treatment Facility and State Prison, Corcoran for one day before arriving in CTF on May 13, 2014.  Dkt. 77, Creamer-Todd Decl. ¶ 2.

Defendant is a female correctional counselor at CTF, whose duties include "drafting reports to classify inmates, reviewing inmates' central files, maintaining control of the interview process with inmates, and interpreting institutional and departmental policies to ensure proper classification of inmates."  *Id.* ¶ 1.

On May 19, 2014, Defendant met with Plaintiff to interview him before the classification hearing with the classification committee, consisting of Defendant, the captain, and another correctional counselor.  *Id.* ¶ 3.

Also on May 19, 2014, Defendant completed another general chrono indicating that Plaintiff received a conviction under California Penal Code § 288a(c).  *Id.*  However, Defendant specifically indicated that Plaintiff was for "PC 288 (a) (c) Oral Copulation with a Child under 14 Years Old on 09/26/1985."  *Id.*; Dkt. 77-1 at 11.  Defendant claims that she had discovered the aforementioned sex crime conviction after reviewing Plaintiff's criminal record ("rap sheet") using the Department of Justice's California Law Enforcement Telecommunications System.  Dkt. 77, Creamer-Todd Decl. ¶ 4.  Having verified the "1985 conviction under Penal Code 288(a)(c)" on Plaintiff's rap sheet, Defendant "decided to continue Plaintiff's minor non-contact visitation restriction."  *Id.*  Defendant further claims she is "not required to review arrest reports or probation officer's reports to find out details about the crime, including the victim's age" nor is she "required to contact difference agencies and departments to verify that the convictions listed on the rap sheet are true and accurate."  *Id.*

On May 20, 2014, the classification committee met with Plaintiff for an initial classification review.  *Id.* ¶ 5.  Defendant was in charge of preparing the documents for the committee.  *Id.*  During the meeting, Defendant informed the committee about Plaintiff's "criminal history, placement scores, reading scores, education, level, commitment offenses, prior arrest history, disciplinary history, sex offenses, and several other factors."  *Id.*  As to Plaintiff's

1   visitation restrictions, Defendant claims that she "discussed how Plaintiff was convicted of Penal

2   Code section 288(a)(c) in 1985 and therefore was restricted to non-contact visits with minors." *Id.*

3   Defendant referenced the general chrono from June 13, 2013 that the DVI correctional counselor

4   from DVI drafted to first restrict Plaintiff's minor visitation privileges. *Id.* Defendant added that

5   Plaintiff was also denied family visits because "family visits shall not be permitted for inmates

6   convicted of a violent offense involving a minor or family member or any sex offense," including

7   Penal Code sections 288 and 288(a). Cal. Code Regs. tit. 15, § 3177(b)(1); Dkt. 77, Creamer-

8   Todd Decl. ¶ 6. Defendant referenced the same June 13, 2013 general chrono to show that

9   Plaintiff's family visitation privileges were also first restricted at DVI. *Id.*

10      Defendant claims that as correctional counselor, she is also "accessible and available to the

11   inmates who seek counseling." *Id.* ¶ 8. She also responds to inmates' requests for "information"

12   or "further action" made on CDCR 22 Request Forms. *Id.* On September 7, 2014, Plaintiff used a

13   CDCR 22 Request Form to request a copy of his abstract of judgment from his 1985 conviction.

14   *Id.* Defendant responded that the CDCR only provides CDCR documents to inmates. *Id.*

15   Defendant claims that "[f]or documents generated by outside agencies, such as arrest reports or

16   police reports, Plaintiff must request them from the outside agencies." *Id.*

17      Defendant advised the Court that despite the instant dispute, on May 14, 2015, she

18   conducted a search of Plaintiff's visitor list and inmate visitation history. *Id.* ¶ 10, Dkt. 77-1 at 16,

19   18. According to Plaintiff's visitor list, there are five people listed as "Current Approved

20   Visitors," including his two sisters, his brother, his brother-in-law and his friend, who are all over

21   the age of 70. Dkt. 77-1 at 16. There are two "Non-Approved Visitors," including Plaintiff's 56-

22   year-old niece and another 67-year-old lady whose relationship with Plaintiff is "unknown." *Id.*

23   Meanwhile, according to Plaintiff's inmate visitation history, only one person has visited Plaintiff

24   during his incarceration, his brother Elmer L. Polk, on July 2, 1995 (twice) and August 6, 1999.

25   Dkt. 77-1 at 18. Defendant claims there is "no record of any other person visiting or attempting to

26   visit Plaintiff." *Id.* Defendant alleges that no minor has attempted to visit Plaintiff during his

27   incarceration, stating: "If a minor attempted to visit Plaintiff, his or her name would have been

28   listed in [Plaintiff's] inmate visitation history, and a reason for being denied the visit would also

United States District Court
Northern District of California

8

be listed." *Id.*

### 3.  Court's Order for Additional Information

In an Order dated October 20, 2015, the Court directed Defendant to submit a declaration:

> a.      addressing whether or not Plaintiff has a prior 1985 criminal conviction under California Penal Code § 288a(c) for Oral Copulation with a Child Under 14 Years Old; and

> b.      attaching supporting exhibits relating to the May 20, 2014 classification decision to continue Plaintiff's minor non-contact visitation restriction, including:
> > 1)      the abstract of judgment for the 1985 conviction;

> > 2)      a copy of all the relevant prison records considered in the May 20, 2014 decision restricting Plaintiff's minor visitation privileges; and

> > 3)      a copy of all documentation relating to the May 20, 2014 decision and explaining how and why such a decision was reached.

Dkt. 88 at 1-2.

In response, on November 20, 2015, Defendant submitted a declaration in response to the October 20, 2015 Order along with supporting exhibits.  Dkts. 97, 97-1.  In her declaration, Defendant states:

> 4.      Neither the rap sheet nor the abstract of judgment describes the details of Plaintiff's conviction under section 288a(c).  In other words, while the rap sheet and abstract of judgment show an oral copulation conviction under section 288a(c), they do not list the specific type of oral copulation Plaintiff was convicted for.  For example, in the abstract of judgment, Plaintiff's conviction is simply described as "Oral Copulation" without any additional details.  And in the rap sheet, the description states, "PC-ORAL COP:-14/ETC OR BY FORCE/ETC."  The specific subsections of section 288a(c) are not displayed.  It is unclear from his rap sheet and abstract of judgment what Plaintiff's conviction under section 288a(c) entails.

> 5.      I followed standard procedure under California Code of Regulations, Title 15, section 3173.1 in deciding whether to recommend continuing Plaintiffs non-contact visitation with minors at Correctional Training Facility (CTF).  Section 3173.l(b) states that "[f]or inmates convicted of PC Section . . . 288a . . . , visitation with any minor who is not the victim of the crime shall be limited to non-contact status except as authorized by the Institution Classification Committee."  Once I verified that Plaintiff was convicted under section 288a(c), which is enumerated in Title 15, I continued his non-contact visits with minors.

9

United States District Court
Northern District of California

1    Dkt. 97, Creamer-Todd Decl. ¶¶ 4-5.

2        In an Order dated December 18, 2015, the Court directed Defendant to file Plaintiff's rap

3    sheet under seal.  Dkt. 98.  On January 6, 2016, Defendant's attorney filed Plaintiff's rap sheet

4    under seal.  Dkt. 99.  The Court has reviewed the abstract of judgment for the 1985 conviction and

5    has conducted an in camera review of Plaintiff's rap sheet and finds the rap sheet inconclusive as

6    it merely references a conviction under California Penal Code § 288(a)(c), which could relate to

7    either "-14/ETC OR BY FORCE/ETC."  *Id.* (emphasis supplied).

8        **C.**     **Administrative Process**

9        Plaintiff contends that he submitted one relevant grievance (dealing with the

10    misclassification issue).[7]  However, Defendant argues that Plaintiff's grievance was rejected as

11    untimely and thus did not exhaust his administrative remedies concerning his due process claim.

12    Plaintiff claims the screening out of his grievance rendered his administrative remedies

13    unavailable.  To provide context to that dispute, the Court summarizes the relevant grievance

14    submitted by Plaintiff below.

15        On July 16, 2014, Plaintiff submitted a grievance ("CTF-S-14-01254") concerning the

16    CDCR's error stating the victim was a "minor," which caused the misclassification at CTF

17    restricting him "from visitation with [his] children or any children, all because of the error made

18    by the [CDCR]."  Dkt. 3 at 3, 5.  Plaintiff requested that the CDCR correct this error.  *Id.* at 5.

19        On July 21, 2014, CTF-S-14-01254 was marked as "RECEIVED" by "CTF Appeals" on

20    that date.  *Id.* at 3.

21        On July 23, 2014, CTF-S-14-01254 was "rejected" on the form at the first level of review.

22    *Id.*  Also on July 23, 2014, Plaintiff was sent a letter from the CTF Appeals Coordinators, entitled

23    "RE: Screening at the FIRST level," stating:

24        Your appeal has been rejected pursuant to the California Code of

25

26       [7] Plaintiff's amended complaint makes reference to another grievance, log no. NR-X-14-

27    00139, which was filed on August 10, 2014 and canceled on August 20, 2014.  Dkt. 10 at 1; Dkt. 2
at 2-7.  However, this other grievance is not relevant to the instant action because it deals with the
actions of former Defendants Gary and Lacy and Plaintiff's claims against them, which have been

28    dismissed for improper venue.  *See id.*

Regulations, Title 15, Section (CCR) 3084.6(b)(7). Your appeal is missing necessary supporting documents as established in CCR 3084.3. All documents must be legible (If necessary, you may obtain copy(ies) of requested documents by sending a request with a signed trust withdrawal form to your assigned counselor). Your appeal is missing:

CDCR Form 22 Inmate/Parolee Request for Interview and CDC 128-G ICC/UCC/CSR[8] Chrono showing this error and discussion.

Submit any documents such as Parole Agent Roy Lacy's attempt to correct error and any court documents showing error in which you describe in your submitted appeal.

Please forward the Form 22 to CCI[9]; wait 3-5 days for a response.

If dissatisfied, re-submit the Form 22 to the supervisor of that area; wait 5-7 days for a response.

If dissatisfied, re-submit your original 602, attach the CDCR 695 and the Form 22 and/or any other supporting documents to the Appeals Office within 30 days of the date of this CDCR 695.

You must complete the Form 22 through to the Supervisory Level before submitting appeal.

Dkt. 20 at 11 (footnotes added). At the bottom of the letter, there are further instructions, stating:

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary to resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.6(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

*Id.*[10]

On July 29, 2014, Plaintiff resubmitted CTF-S-14-01254 to the first level of review. Dkt. 1 at 27-30. On the grievance form, Plaintiff also explained what was contained in the resubmission of his appeal by including a written response under the section relating to the inmate's dissatisfaction with the response at the first level of appeal. Dkt. 3 at 4, 6. He wrote as follows:

---

[8] ICC stands for Institutional Classification Committee. UCC stands for Unit Classification Committee. CSR stands for Classification Staff Representative.

[9] CCI stands for Correctional Counselor I.

[10] This same instruction is located at the bottom of every letter sent to Plaintiff from the Appeals Coordinator, including the July 31, 2014 letter. Dkts. 20 at 11; 78-1 at 7.

United States District Court
Northern District of California

> I am submitting a copy of [California] Penal Code 288A(2) oral copulation. This is where I feel the error was made. Someone within the [CDCR] misinterpret[ted] the law and my charge of oral copulation in 1985. That charge said any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years. I was sentenced to eight years for that charge. I knew the victim for five years befor[e] that crime happen[ed] so I know the age of the victim. I am not distorting the facts, and I feel that the [CDCR], and classification should resolve the complexity of this case, or appeal, and visitation privileges by taking a deep look into this problem. The truth will emerge from the old central file necessary involvement from other agencies, like Stockton parole department. A telephone interview would provide additional facts, and compelling information. Why would the [CDCR] not want to know the truth, and not continue the travesty of justice[?] I do not have access to all the documents that I need at this time because of being incarcerated. But I will see this out until I have justice. Thank you.

*Id.* Plaintiff's resubmitted CTF-S-14-01254 was marked as "RECEIVED" by "CTF Appeals" on July 31, 2014. *Id.* at 3.

On July 31, 2014, Plaintiff received a final letter from the CTF Appeal Coordinators, entitled "RE: Screening at the FIRST level," which canceled CTF-S-14-01254 as untimely and states as follows:

> Your appeal has been cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(4). Time limits for submitting the appeal are exceeded even though you had the opportunity to submit within the prescribed time constraints.

> Committee action was taken on 5/20/14. Appeal filed on 7/21/14. 62 days after action taken. Appeals must be filed within 30 days of action taken. Suggest contacting Sentencing Court directly or Parole Agent Lacy to attempt corrections on your case.

Truett Decl., Dkt. 78-1 at 7.

There is nothing in the record showing that Plaintiff filed a separate appeal on the cancellation decision, as he was instructed at the bottom of both the July 23, 2014 and July 31, 2014 letters from the CTF Appeals Coordinators. *See* Dkt. 20 at 11; Truett Decl., Dkt. 78-1 at 7. There is also nothing in the record showing that Plaintiff pursued CTF-S-14-01254 to the third level of review. *See* Voong Decl. ¶ 8.

12

### D.     Procedural History

On September 29, 2014, Plaintiff commenced the instant federal civil rights action, and thereafter he filed an amended complaint seeking monetary damages and injunctive relief as to the only remaining claim of a due process violation against Defendant.  Dkt. 10.  As mentioned above, Defendant has filed a motion for summary judgment based on the ground that Plaintiff failed to exhaust his administrative remedies in connection with his due process claim and, specifically, his related claim for monetary damages.  Dkt. 73.  The motion is fully briefed and ripe for adjudication.[11]

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record").  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en

---

[11] Among the numerous motions filed by Plaintiff is his request for a continuance under Rule 56(d) (Dkt. 84 at 28-30), which involves a procedure by which a party may avoid summary judgment when such party has not had sufficient opportunity to discover affirmative evidence necessary to oppose the motion.  *See Garrett v. San Francisco*, 818 F. 2d 1515, 1518 (9th Cir. 1987).  In particular, Rule 56(d) provides that a court may deny a summary judgment motion and permit the opposing party to conduct discovery where it appears that the opposing party, in the absence of such discovery, is unable to present facts essential to opposing the motion.  *See* Fed. R. Civ. P. 56(d).  Because the Court will be denying Plaintiff's 56(d) motion, *see infra* V.(Discussion)A.3., the motion for summary judgment is considered fully briefed and will be resolved below.

United States District Court
Northern District of California

banc).  The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  *Id.* at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of proof remains with defendants, however.  *Id.*  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  *Id.* at 1166.

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendant has presented various exhibits and declarations from herself (her two declarations dated August 4, 2015 and November 20, 2015) as well as those from Chief of the Office of Appeals M. Voong and CTF Appeals Coordinator J. Truett.  Dkts. 76-78, 97.

Plaintiff has filed a verified amended complaint (Dkt. 10) and verified oppositions to the motion for summary judgment as well as supporting exhibits to his oppositions (Dkts. 83; 84 at 1-27; 85).  The Court will construe these filings as affidavits under Federal Rule of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

## V.    DISCUSSION

### A.    Preliminary Issues and Ancillary Motions

#### 1.    Motion for Appointment of Counsel

Plaintiff moves the Court to appoint counsel.  Dkt. 19.  The Ninth Circuit has held that a district court may ask counsel to represent an indigent litigant only in "exceptional circumstances," the determination of which requires an evaluation of both (1) the likelihood of success on the merits and (2) the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved.  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Plaintiff has been able to present his claim adequately, and the issues are not complex. Accordingly, Plaintiff's motion for appointment of counsel is DENIED.  Dkt. 19.

### 2.   Discovery Motions

Plaintiff filed a motion to compel Defendant to produce certain discovery.  Dkts. 37, 61, 63, 96.  In general, the Court will not interfere with discovery matters unless and until the parties have satisfied the "meet and confer" requirements of the discovery rules.  *See* Fed. R. Civ. P. 37(a)(2)(A) (providing that a motion to compel must include certification that the movant has in good faith conferred or attempted to confer with non-disclosing party in an effort to secure disclosure without court action).  There is nothing in the record that shows that Plaintiff has complied with this rule by making a reasonable and good-faith attempt to "meet and confer" before seeking judicial intervention.  In any event, even if he had, as further explained below, the Court will be granting Defendant's dispositive motion based on Plaintiff's failure to exhaust administrative remedies.  It seems all the outstanding discovery disputes (which do not pertain to the exhaustion issue) will thus be moot after the Court grants the dispositive motion.  Therefore, Plaintiff's discovery motions are DENIED.  Dkts. 37, 61, 63, 96.

### 3.   Rule 56(d) Motion for Continuance

As mentioned above, the Court has construed Plaintiff's motion entitled "Motion for Change Time to File Plaintiff's Opposition for the Reasons Set Forth in the Accompanying Declaration of Plaintiff" as a Rule 56(d) motion.  Dkt. 84 at 28-30.  In this motion, Plaintiff makes a conclusory argument that outstanding discovery issues warrant a continuance because "without these documents Plaintiff [has] no case."  *Id.* at 29.  He adds that "with these documents Plaintiff can prove the set of facts in support of his claim which would entitle him to relief."  *Id.*  Plaintiff also includes arguments relating to the merits of his due process claim.  *Id.* at 30.  Plaintiff mentions nothing in this motion about his need for a continuance to oppose Defendant's argument that Plaintiff's administrative remedies are unexhausted.  Nowhere does Plaintiff indicate that any of the aforementioned outstanding discovery issues pertain to the exhaustion of his due process claim.  Finally, it seems that Plaintiff has since filed lengthy opposition briefs to Defendant's dispositive motion, which the Court will consider in resolving Defendant's motion.  Dkts. 83; 84 at 1-27; 85.

Rule 56(d) allows the Court to defer consideration of a motion where "a nonmovant shows

United States District Court
Northern District of California

by affidavit or declaration that, for specified reasons, it cannot represent facts essential to justify its opposition." To obtain relief under Rule 56(d), "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir.2008). Here, Plaintiff fails to describe the specific facts that would be revealed or why this discovery would preclude summary judgment. Again, Plaintiff does not allege that any of the outstanding discovery issues pertain to the exhaustion of his due process claim. "Failure to comply with the requirements of Rule [56(d)] is a proper ground for denying discovery and proceeding to summary judgment." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986). Therefore, Plaintiff's request for a continuance pursuant to Rule 56(d) is DENIED. Dkt. 84 at 28-30.

### 4. Plaintiff's Motions to Amend

Plaintiff has filed three documents entitled "Motion to Amend Complaint." Dkts. 20, 21, 87. The Court will resolve each motion in turn.

#### a. First Motion to Amend

In Plaintiff's first "Motion to Amend," he requests the Court to take "judicial notice" of certain "interviews, appeals, and mental health records," including "interviews with Defendant Creamer-Todd." Dkt. 20 at 1-2. Therefore, this motion shall be construed as a motion for judicial notice. At the time Plaintiff filed this motion for judicial notice, Defendant had not yet filed the pending disposition motion. Thus, Plaintiff's request reflects a fundamental misunderstanding of the judicial notice process and erroneous belief that it is the normal way to present evidence to the Court. The Court can judicially notice facts that are not subject to reasonable dispute in that they are generally known within the territorial jurisdiction of the Court or they are capable of ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The records pertaining to a prisoner—such as his medical records or inmate appeals—are not the sort of documents of which judicial notice may be taken. It cannot be said that the contents of Plaintiff's prison records are facts generally known within the Court's territorial

1    jurisdiction or that can be accurately and readily determined from sources whose accuracy cannot

2    reasonably be questioned.  The usual way for a litigant to present documentary evidence is to

3    attach the documents to a declaration that authenticates the documents.  Evidence and declarations

4    usually are submitted in connection with a motion by or against the litigant.

5         Here, Defendant has since filed a motion for summary judgment, and in support of that

6    motion, Defendant has submitted declarations with documents attached in support of the motion,

7    including the relevant 602 appeal— CTF-S-14-01254—of which Plaintiff requests the Court to

8    take judicial notice.  Accordingly, to the extent that Plaintiff request judicial notice of CTF-S-14-

9    01254, such a request is DENIED as unnecessary because a copy of that appeal has been presented

10   as supporting documentary evidence to Defendant's dispositive motion.  Plaintiff's requests for

11   judicial notice as to the remaining documents, including various interviews and mental health

12   records are DENIED because, as mentioned above, such documents are not those of which judicial

13   notice may be taken.  Dkt. 20.

14   ### b.  Second Motion to Amend

15        In his second motion to amend, Plaintiff requests leave to amend his amended complaint in

16   order to "add new statements" to his due process claim against Defendant.  Dkt. 21 at 1-2.  The

17   Court has already concluded that Plaintiff's amended complaint states a cognizable due process

18   claim.  Therefore, such a request is not necessary.  Plaintiff also requests leave to amend his

19   complaint to assert specific claims for relief, including $25,000 in compensatory damages.

20   Plaintiff need not amend his complaint to set forth a specific monetary figure requested in

21   damages.  *See* Fed. R. Civ. P. 8(a).  Therefore, such a request is also unnecessary.  Accordingly,

22   Plaintiff's second motion to amend is DENIED as unnecessary.  Dkt. 21.

23   ### c.  Third Motion to Amend

24        In his third motion to amend, Plaintiff seeks to join the following CTF employees as party-

25   defendants who are correctional counselors like Defendant, including: K. Ferguson and K. Miley.

26   Dkt. 87.  Plaintiff claims that these individuals were "actively involved in the process [of]

27   classifying Plaintiff as a child molester" and in "restricting Plaintiff['s] visitation privileges when

28   prison officials kn[e]w without a doubt that the victim in Plaintiff['s] 1985 case was not a minor."

17

1    Dkt. 87 at 1-2.

2         Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint should

3    be "freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Four factors are commonly

4    used to determine the propriety of a motion for leave to amend.  These are: bad faith, undue delay,

5    prejudice to the opposing party, and futility of amendment."  *Ditto v. McCurdy*, 510 F.3d 1070,

6    1079 (9th Cir. 2007) (citations and internal quotation marks omitted).  The decision to grant or

7    deny a request for leave to amend rests in the discretion of the trial court.  *See California v. Neville*

8    *Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004).

9         Here, the pertinent facts persuade the Court that granting leave to amend to join new

10   parties is unwarranted.  As an initial matter, Plaintiff unduly delayed in bringing his motion.  On

11   February 4, 2015, the Court noted that Plaintiff wished to add other defendants who violated his

12   due process rights, but that he did not know their names.  Dkt. 11 at 3.  The Court granted Plaintiff

13   leave to file a motion to amend to add these defendants if he learns of their names in the course of

14   discovery.  *Id.*  Yet, Plaintiff delayed almost eight months before filing his motion for leave to

15   amend to add these defendants on October 1, 2015.  Dkt. 87.  This delay also suggests bad faith,

16   given that Plaintiff filed his motion after both the deadlines set by the Court had passed for

17   Defendant's dispositive motion and his opposition.  *Acri v. Int'l Ass'n of Machinists & Aerospace*

18   *Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (affirming denial of leave to amend where plaintiff

19   delayed in bringing a proposed claim as a tactical matter to avoid the possibility of an adverse

20   summary judgment ruling).

21        The proposed amendment also is futile.  In his motion to amend, Plaintiff does not

22   specifically allege the conduct that gives rise to his claim for due process.  He only makes a

23   conclusory allegation that Correctional Counselors Ferguson and Miley "are still not trying to

24   correct the error made in [Plaintiff's] case" and because they "are simply ignoring the error . . .

25   they should be held accountable civilly for their infringement."  Dkt. 87 at 1.  While Plaintiff may

26   have identified other correctional counselors at CTF, he fails to allege what role, if any, each of

27   these two putative Defendants played in the specific constitutional deprivation.  *See Jones v.*

28   *Williams*, 297 F.3d 930, 936 (9th Cir. 2002) (either personal involvement or integral participation

United States District Court
Northern District of California

United States District Court
Northern District of California

1    of each defendant in the alleged constitutional violation is required before liability may be

2    imposed); *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996) (a defendant cannot be held liable

3    simply based on his membership in a group without showing his individual participation in

4    unlawful conduct).   Finally, the Court finds that permitting the proposed amendment would by

5    unduly prejudicial to Defendant Creamer-Todd, who has timely filed her motion for summary

6    judgment based on the due process claim which the Court found cognizable in its Order of

7    Service.   To allow Plaintiff to pursue vaguely alleged claims at this late stage of the action would

8    undoubtedly be prejudicial, particularly given that the dispositive motion deadline has passed.   *Cf.*

9    *Acri*, 781 F.2d at 1398 (affirming denial of motion for leave to amend on the ground that

10   "allowing amendment would prejudice the [defendant] because of the necessity for further

11   discovery").   The factors germane to Court's exercise of discretion under Rule 15 militate against

12   granting leave to amend.   Accordingly, Plaintiff's third motion to amend is DENIED.   Dkt. 87 at

13   1-19.

14        The Court further notes that attached to Plaintiff's third motion for leave to amend is

15   another motion entitled, "Motion for Summary Judgment in Favor of Plaintiff . . . Move the Court

16   to Properly Take Judicial Notice of Plaintiff Genuine Issue."   Dkt. 87 at 20-23.   In this motion,

17   Plaintiff states that he "argues that summary judgment not be against Plaintiff while discovery

18   motions are still pending . . . ."   *Id.* at 21.   It seems that Plaintiff is again attempting to file a Rule

19   56(d) motion.   However, just as the Court has previously found above, Plaintiff still does not

20   allege that any of the outstanding discovery issues pertain to the exhaustion of his due process

21   claim.   Therefore, to the extent that Plaintiff is making another request for a continuance under

22   Rule 56(d), such a request is DENIED.   Dkt. 87 at 20-23.

23        **5.   Motion to Stop Retaliation**

24        On June 1, 2015, Plaintiff filed a motion entitled, "Motion to Stop Retaliation," in which

25   he challenges unrelated conditions of his previous confinement at CTF.   Dkt. 47.   Specifically,

26   Plaintiff claims that Defendant is married to a CTF Correctional Officer who "has friends who are

27   officer assigned to [Plaintiff's] unit."   *Id.* at 2.   Plaintiff claims that at the time he was still

28   incarcerated at CTF, "the classification of an inmate as a sex offender may create the type of

1    atypical and significant hardship in relation to the ordinary incidents of prison [life]." *Id.*

2    However, Plaintiff did not allege any specific acts of retaliation.  Even if he had alleged such a

3    claim, it would be more appropriately addressed in a *separate* civil rights complaint pursuant to 42

4    U.S.C. § 1983.  Therefore, if Petitioner wishes to pursue such a claim, he may do so by filing a

5    new civil rights action accompanied by the requisite $350.00 filing fee or another *in forma*

6    *pauperis* application.  Accordingly, Plaintiff's "Motion to Stop Retaliation" is DENIED.  Dkt. 47.

         **B.    Analysis of Defendant's Motion for Summary Judgment**

7

8             **1.  Defendant's Initial Burden of Proving Unexhaustion**

9         Defendant acknowledges that Plaintiff filed a relevant grievance, CTF-S-14-01254, but

10   contends that the grievance was deemed untimely.  Dkt. 27 at 16-17.  The undisputed evidence

11   shows that CTF-S-14-01254 was initially rejected on July 23, 2014 because it was "missing

12   necessary supporting documents, including a CDCR 22 Request Form, which Plaintiff must

13   submit prior to submitting his appeal form, and a CDC 128-G ICC/UCC/CSR Chrono Form,

14   which shows the error that Plaintiff describe[d] in his appeal."  Truett Decl., Dkt. 78 at 4 (footnote

15   added).  Thus, Plaintiff's initial filing of CTF-S-14-01254 did not properly exhaust his

16   administrative remedies.  *See Woodford*, 548 U.S. at 90 (proper exhaustion requires using all steps

17   of an administrative process and complying with "deadlines and other critical procedural rules").

18        Irrespective of the merits of Plaintiff's claim, on July 31, 2014, CTF-S-14-01254 was

19   cancelled, and its cancellation as untimely is supported by California prison regulations.  Because

20   CTF-S-14-01254 alleged the underlying committee action (to restrict visitation with minors)

21   occurred on May 20, 2014, Plaintiff was required to submit his grievance within "30 calendar

22   days" of that date.  *See* Cal. Code Regs. tit. 15, § 3084.8(b)(1).  However, CTF-S-14-01254 was

23   not filed by Plaintiff until July 21, 2014—62 calendar days after May 20, 2014.  Thus, CTF-S-14-

24   01254 was properly cancelled as untimely.  *See id.*  Specifically, the record shows that the July 31,

25   2014 letter indicated that CTF-S-14-01254 was cancelled pursuant to section 3084.6(c)(4), which

26   provides that an inmate appeal may be cancelled for the following reason:

27             Time limits for submitting the appeal are exceeded even though the
              inmate or parolee had the opportunity to submit within the
28            prescribed time constraints.  In determining whether the time limit

1

> has been exceeded, the appeals coordinator shall consider whether
> the issue being appealed occurred on a specific date or is ongoing.

2   Cal. Code Regs. tit. 15, § 3084.6(c)(4).  Once cancelled, an appeal shall not be accepted except

3   pursuant to section 3084.6(a)(3), which provides that "[a]t the discretion of the appeals

4   coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a

5   determination is made that the cancellation was made in error or new information is received

6   which makes the appeal eligible for further review."  *Id.* § 3084.6(a)(3).  Here, no such

7   determination of error was made and the cancelled CTF-S-14-01254 was not eligible for further

8   review.  Plaintiff was advised that he could file a separate appeal on the cancellation decision, *see*

9   Truett Decl., Dkt. 78-1 at 7, but he did not do so.  Because the "cancellation" of an appeal "does

10  not exhaust administrative remedies," *see* Cal. Code Regs. tit. 15, § 3084.1(b), the undisputed

11  evidence demonstrates that there were available administrative remedies for Plaintiff, and that

12  Plaintiff failed to exhaust those remedies properly, *see Albino*, 747 F.3d at 1172.

13          **2.  Plaintiff's Burden of Proving Unavailability of Administrative Remedies**

14          Having adequately shown that there were available administrative remedies that Plaintiff

15  did not fully exhaust, the burden shifts to Plaintiff "to come forward with evidence showing that

16  there is something in his particular case that made the existing and generally available

17  administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1166.  Improper

18  screening of a prisoner's administrative grievances may excuse a failure to exhaust.  *See Sapp v.*

19  *Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010).  The prisoner must demonstrate "(1) that he

20  actually filed a grievance or grievances that, if pursued through all levels of administrative

21  appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2)

22  that prison officials screened his grievance or grievances for reasons inconsistent with or

23  unsupported by applicable regulations."  *Id.* at 823-24.

24          Here, Plaintiff has met the first *Sapp* factor, as shown by his attempt to file CTF-S-14-

25  01254, which would have sufficed to exhaust his due process claim.  *See id.*  However, as

26  explained above, CTF-S-14-01254 was cancelled as untimely under prison regulations.  *See* Cal.

27  Code Regs. tit. 15, §§ 3084.6(c)(4), 3084.8(b)(1).  Therefore, in order to satisfy the second *Sapp*

28  factor Plaintiff must show that prison officials rejected and cancelled CTF-S-14-01254 for reasons

United States District Court
Northern District of California

1    inconsistent with applicable regulations.  *See Sapp*, 623 F.3d at 823-24.

2         Plaintiff has opposed Defendant's motion by claiming that he could not successfully

3    exhaust his administrative remedies.  Prior to enumerating these reasons, the Court notes that

4    Plaintiff has filed three different opposition briefs which are labeled as follows: "Administrative

5    Appeals" (Dkt. 83); "Attachment 13" (Dkt. 84); and "Supplement to Opposition" (Dkt. 85).  The

6    first two briefs are over 150-pages each (with multiple attachments).  They are both very

7    disorganized and difficult to decipher because the arguments are not presented in a logical fashion,

8    and the attachments are randomly placed.  The last brief is more straight-forward because it is only

9    eight pages long, including two one-page attachments.  In her reply to the opposition, Defendant

10   has isolated Plaintiff's three main arguments from the opposition briefs.  The Court agrees that

11   these three arguments, listed below, best represent Plaintiff's reasons for opposing the dispositive

12   motion.  They are as follows:

13        (1) Plaintiff claims that the issues he raised in CTF-S-14-01254 cannot be solved by the

14   prison's grievance process because the prison is "not equipped to review complex court issues"

15   and he asserts that his problem "did not involve[] a prison condition [but] it involved a[n] error

16   that the courts made" and thus it is for the courts to resolve (Dkt. 83 at 6-7[12]);

17        (2) Plaintiff claims he is entitled to the "equitable exception" to the PLRA's exhaustion

18   requirement because he argues that "prison officials screened [his] appeal for reasons inconsistent

19   with or unsupported by applicable regulation" (Dkt. 83-5 at 1-2); and

20        (3) Plaintiff claims that CTF-S-14-01254 was canceled because Defendant did not give

21   him the documents he needed to move forward, and he argues that "had [Defendant] given [him]

22   the documentation that [he] requested, [he] could have successfully exhausted all of [his]

23   administrative remedies" (Dkt. 83-5 at 3; Dkt. 85 at 3).

24                  **a.   CTF-S-14-01254 Did Not Involve Prison Condition**

25        Plaintiff "do[es] not feel that exhaustion should be required in [his] case" because CTF-S-

26   14-01254 did not involve a "prison condition," and rather, "it involved a[n] error that the courts

27   _____

28        [12] Page number citations refer to those assigned by the Court's electronic case management
     filing system and not those assigned by Plaintiff.

                                                   22

United States District Court
Northern District of California

made, and about the parole department, and the Department of Justice." Dkt. 83 at 7.

Specifically, he contends that the prison's grievance process was "unsuitable for the problem" he

had, and that such a process "would have been ineffective in promptly addressing the principal

allegations in this litigation." *Id.*

Here, Plaintiff's first argument is unavailing. Even when the relief sought cannot be

granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust

administrative remedies. *Porter*, 534 U.S. at 524; *see also Woodford*, 548 U.S. at 85-85 (citing

*Booth*, 532 U.S. at 734). Furthermore, the PLRA's exhaustion requirement is not limited to prison

conditions, but it applies to "all inmate suits about prison life," whether they involve general

circumstances, specific episodes, or some other wrong, which would include a challenge to the

classification committee's decision to continue Plaintiff's visitation restriction with minors.

*Porter*, 534 U.S. at 532. Thus, even if the prison could not provide the relief Plaintiff sought, he

was required to exhaust his appeal to the third and final level before filing this lawsuit against

Defendant. However, Plaintiff did not do so. *See* Voong Decl. ¶ 8. Moreover, the Court finds

that Plaintiff has not presented any extraordinary circumstances to excuse him from complying

with PLRA's exhaustion requirement. *Cf. Booth*, 532 U.S. at 741 n.6 (courts should not read

"futility or other exceptions" into section 1997e(a)). Therefore, Plaintiff's first argument does not

persuade.

### b.  "Equitable Exception"

The Court next considers Plaintiff's argument that he is entitled to an "equitable

exception" to the exhaustion requirement. Dkt. 83-5 at 1-2. In essence, Plaintiff seems to be

asserting that he should not be precluded from proceeding with his unexhausted due process claim

because he did not deliberately bypass the administrative grievance process and had a good-faith

belief that further review was unavailable to him after CTF-S-14-01254 was cancelled. *Id.* at 1.

In *Sapp*, the Ninth Circuit found no equitable exception to exhaustion based on similar

assertions by the plaintiff therein. 623 F.3d at 827-28. Specifically, the Ninth Circuit found no

equitable exception was available where the evidence suggested the plaintiff believed in good faith

that he could not pursue further administrative remedies after his appeal had been screened out,

but such belief was not reasonable.  *Id.* at 827.  In the instant case, the Court has found that a similar belief by Plaintiff, even if held in good faith, was not reasonable.  As discussed above, Plaintiff could not have had a reasonable belief that he could not pursue further administrative remedies after the first level screening or cancelation decision, as CTF-S-14-01254 was screened out and eventually cancelled with instructions expressly informing Plaintiff as to what he needed to do to appeal the cancelation.  In fact, there is no evidence Plaintiff made any attempts to appeal the cancelation of CTF-S-14-01254.

Plaintiff also contends in conclusory fashion that prison officials screened his appeal for "reasons inconsistent with or unsupported by applicable regulation."  Dkt. 83-5 at 2.  However, Plaintiff does not further elaborate.  Contrary to Plaintiff's allegations, the Court has explained above that CTF-S-14-01254 was cancelled because it was untimely pursuant to a prison regulation—specifically, section 3084.6(c)(4), which provides that an inmate appeal may be cancelled if the time limits for submitting an appeal are exceeded.  *See* Cal. Code Regs. tit. 15, § 3084.6(c)(4).  Therefore, Plaintiff has not satisfied the second *Sapp* factor because has not shown that prison officials rejected and cancelled CTF-S-14-01254 for any reason inconsistent with applicable regulations.  *See Sapp*, 623 F.3d at 823-24.  Thus, Plaintiff would not be excused from the exhaustion requirement under *Sapp*.

Based on the above, Plaintiff's failure to exhaust is not excused on equitable grounds, and his second argument fails.

### c.  Defendant Prevented Plaintiff's Exhaustion of Administrative Remedies

Finally, Plaintiff asserts that CTF-S-14-01254 was canceled because Defendant did not give him certain documents that he requested from her, and had she given them to him he "could have successfully exhausted all of [his] administrative remedies."  Dkt. 85 at 3.  Plaintiff essentially claims that Defendant prevented him from exhausting his administrative remedies because he alleges that her failure to provide him with the documents led to CTF-S-14-01254 being cancelled.  Dkt. 83-5 at 3.  Not only is Plaintiff's third argument conclusory and unsupported by any facts, but it is also unrelated to the actual reason CTF-S-14-01254 was cancelled—it was untimely when it was first *filed* by Plaintiff.  In other words, Defendant did not

United States District Court
Northern District of California

*prevent* Plaintiff from timely filing CTF-S-14-01254 by failing to provide him with documents because the record shows it was *Plaintiff's* own delay that led him to file CTF-S-14-01254 past the thirty-day filing deadline.

As explained above, the incident Plaintiff complains of is the May 20, 2014 classification committee's decision to restrict minor visitation privileges.  Plaintiff had thirty days after the May 20, 2014 decision to file his appeal, which means the filing deadline was no later than June 19, 2014.  However, instead of filing his appeal by June 19, 2014, he waited until July 21, 2014, or sixty-two days after the May 20, 2014 decision, to file an appeal about it.  The record shows that the CTF Appeals Coordinators cancelled CTF-S-14-01254 because of this delay.  *See* Truett Decl., Dkt. 78-1 at 7.  Defendant could not have contributed to the delay in any way because nothing in the record shows that Plaintiff requested any documents from her *prior to* filing CTF-S-14-01254. The record shows that Plaintiff requested documents from Defendant on July 24, 2014 and September 1, 2014.  Dkt. 84-2 at 2-3.  As such, both document requests were made *after* Plaintiff had filed his untimely appeal on May 20, 2014.  Therefore, Plaintiff fails to show that Defendant's actions or omissions *prevented* him from exhausting his administrative remedies, and his argument is without merit.

Most importantly, even after CTF-S-14-01254 was properly canceled, Plaintiff had various options to move the appeals process forward and exhaust his administrative remedies, i.e., he could have appealed the cancelation of CTF-S-14-01254.  Truett Decl. ¶ 12.  But the record shows that Plaintiff did not pursue any of the options, and he concedes that he did not.  Dkts. 10 at 1-3; 83 at 7.  Again, Plaintiff filed an untimely appeal, and it was also his choice to file the instant lawsuit against Defendant without complying with the PLRA's exhaustion requirement.  And Plaintiff provided no evidence that Defendant prevented Plaintiff from successfully exhausting his administrative remedies before filing suit.

By failing to file a timely grievance at CTF, choosing not to appeal the cancelation of CTF-S-14-01254, and instead filing the instant action in federal court, Plaintiff deprived CTF prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case," which is the purpose of the PLRA exhaustion requirement.  *Porter*,

25

534 U.S. at 525. Plaintiff's inability to exhaust is attributable, in part, to his delay in filing CTF-S-14-01254 and not to Defendant's failure to provide him with documents. Therefore, Plaintiff's third argument is without merit. Accordingly, Plaintiff has not met his burden to show that there was something in his particular case that made generally available administrative remedies effectively unavailable to him. *See Albino*, 747 F.3d at 1172. In sum, Defendant has met the ultimate burden of presenting evidence of unexhaustion, which Plaintiff has not persuasively disputed. Plaintiff's filing of an untimely appeal—CTF-S-14-01254—that was eventually cancelled does not constitute proper exhaustion. *Woodford*, 548 U.S. at 84. The prison's requirements define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218. A grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue. *Woodford*, 548 U.S. at 90. The undisputed facts show that Plaintiff failed to comply with these requirements, and he has not presented evidence that precludes summary judgment.

Accordingly, Defendant's motion for summary judgment is GRANTED on the ground that Plaintiff failed to exhaust his administrative remedies as to his due process claim,[13] and, specifically, as to his remaining claim for monetary damages.[14]

## VI.    CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.    Plaintiff's claims for injunctive relief are DISMISSED as moot.

2.    Plaintiff's motion for appointment of counsel is DENIED. Dkt. 19.

3.    Plaintiff's discovery motions are DENIED. Dkts. 37, 61, 63, 96.

4.    Plaintiff's request for a continuance pursuant to Rule 56(d) is DENIED. Dkt. 84 at 28-30.

5.    Plaintiff's first motion to amend has been construed as a motion for judicial notice. His request for judicial notice as to CTF-S-14-01254 is DENIED as moot, and his requests for

---

[13] Notwithstanding its granting of Defendant's motion, the Court has also confirmed that the error regarding Plaintiff's classification has been rectified. Dkt. 95 at 1, 5; Dkt. 102 at 6.

[14] The Court's finding that Defendant is entitled to summary judgment as to Plaintiff's due process (based on the failure to exhaust administrative remedies) obviates the need to address Defendant's alternative argument that she is entitled to qualified immunity.

United States District Court
Northern District of California

1    judicial notice as to the remaining documents (including various interviews and mental health

2    records) are DENIED because such documents are not those of which judicial notice may be

3    taken.  Dkt. 20.

4         6.      Plaintiff's second motion to amend is DENIED as unnecessary.  Dkt. 21.

5         7.      Plaintiff's third motion to amend is DENIED.  Dkt. 87 at 1-19.  In addition, to the

6    extent that Plaintiff is making another request for a continuance under Rule 56(d), such a request

7    is DENIED.  Dkt. 87 at 20-23.

8         8.      Plaintiff's "Motion to Stop Retaliation," in which he challenges unrelated

9    conditions of his previous confinement at CTF, is DENIED.  Dkt. 47.  Plaintiff may pursue any

10   new claims by filing a new civil rights action along with the requisite filing fee.

11        9.      Defendant's motion for summary judgment is GRANTED based on Plaintiff's

12   failure to exhaust administrative remedies.  Dkt. 73.  Plaintiff's amended complaint is

13   DISMISSED without prejudice to refiling his claim for monetary damages relating to his due

14   process claim after exhausting California's prison administrative process.  *See McKinney v. Carey*,

15   311 F.3d 1198, 1200-01 (9th Cir. 2002) (proper course in claims dismissed due to failure to

16   exhaust administrative remedies is dismissal without prejudice to refiling).

17        10.     The Clerk of the Court shall terminate all remaining pending motions as moot,

18   including Defendant's Motion to Stay Discovery Pending Ruling on Dispositive Motion (Dkt. 80)

19   as well as Plaintiff's remaining motions to:

20             a.      "Seal Legal Documents [15]" (Dkts. 31, 62);

21             b.      "Suspend Civil Rights Hearing Until Court Of Appeals Ruling[16]" (Dkt. 32);

---

[15] In his motions to "seal[] legal documents," Plaintiff requests for the Court to seal all
envelopes so as to prevent prison staff from reading his mail.  Dkts. 31, 62.  Such a request is
DENIED as moot because Plaintiff is no longer incarcerated and summary judgment has been
granted.

[16] The Court notes that in Plaintiff's motion to "suspend civil rights hearing until court of
appeals ruling," Plaintiff argues that merits of his due process claim.  Dkt. 32.  Nowhere does
Plaintiff explain what "court of appeals ruling" he is referring to.  Instead, in addition to arguing
the merits of his claim, Plaintiff makes a conclusory allegation of a "conspiracy" which is
unrelated to the due process claim at issue.  *Id.* at 1-2.  The Court DENIES Plaintiff's motion as
moot because summary judgment has been granted.  If Plaintiff wishes to pursue the unrelated
conspiracy claim, he may file a new civil rights action accompanied by the requisite filing fee.

United States District Court
Northern District of California

c.     Issue a Temporary Restraining Order ("TRO")[17] (Dkt. 38);

d.     Issue an Order Not Allowing Defendant Any More Extensions (Dkt. 41);

e.     "Introduce Exhibits A-G[18] Into Evidence" (Dkt. 45);

f.     Allow "Permission to Give Interview to the News Media" (Dkt. 46);

g.     Order "Production of Central File D17217" (Dkt. 48);

h.     Grant "Injunction Prospective Relief" (Dkt. 49); and

i.     Order "Sanctions for Failure to Answer Interrogatories" (Dkt. 61).

11.     The Court notes that Plaintiff has filed numerous motions in this action, all of which the Court has resolved in this Order.  Because summary judgment has been granted, Plaintiff is instructed not to file any more motions in this matter that do not pertain to any requests for reconsideration.

12.     A separate final judgment shall be entered in favor of Defendant and against Plaintiff.

13.     This Order terminates Docket Nos. 19, 20, 21, 31, 32, 37, 38, 41, 45, 46, 47, 48, 49, 61, 62, 63, 73, 80, 84 at 28-30, 87 and 96.

IT IS SO ORDERED.

Dated: February 29, 2016

_____
YVONNE GONZALEZ ROGERS
United States District Judge

---

[17] In his motion for a TRO, Plaintiff requests that the Court prevent prison officials from transferring him out of CTF.  Dkt. 38.  However, his request is DENIED as moot because Plaintiff is no longer incarcerated.

[18] The Court notes that Exhibits A-G are not related to the exhaustion issue and are mostly court documents from this action.